Please call the next case. Case number 4-12-0810, the City of Charleston v. Workers' Compensation Commission. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, Mr. Johnson. I'm Jack Shanahan on behalf of the appellant, City of Charleston. Your Honors, I'm here today to ask that you deny benefits or compensation under the Workers' Compensation Act to John Philpott, a firefighter, no less, who was catastrophically injured on April 6, 2004, while, generically speaking, volunteering or working at a construction site for the City of Charleston Fire and Police Training Center. Denial of benefits under the circumstances of the injury that occurred is not an easy position for me or the City to be in, but it is, in fact, not the position the City or its attorneys expected to be in in the immediate aftermath of April 6, 2004. In fact, the City paid Mr. Philpott his workers' compensation benefits and his medical bills to the tune of about $600,000 in medical for the first 16 months following April 6, 2004. The reason we're here, in fact, has to do with choices made by the claimant through an attorney that he hired who chose to reject the application of the Workers' Compensation Act and chose to reject the benefits of workers' compensation. The consequences of the claimant's actions are, in fact, why we're here. I will forego a detailed summary of the facts, unless the Court prefers, but I do believe a timeline as laid out in the briefs is helpful for this discussion. We have an injury date of April 6, 2004. Benefits for lost time in medical treatment commenced immediately. In February 2005, Mr. Philpott filed a line-of-duty disability application with the City of Charleston Pension Board. The following month, through an attorney he hired, he filed a civil suit for negligence against the City of Charleston, March 2005. Benefits continued under the Workers' Compensation Act from the City for months after that filing. This was not a gotcha moment that the City was waiting for or anything. We continued to pay benefits. In July 2005, an affidavit was filed in the civil court, circuit court case, signed by Mr. Philpott's sworn testimony listing, I believe, 16 separate reasons by which he was not employed or in the course and scope of his employment on April 6, 2004 with the City of Charleston. At the end of August 2005, the City of Charleston acceded to the claimant's desire to elect his remedy to get into another issue, but in any event, assert that he was not in the course and scope of his employment. And at that point, and only at that point, terminated benefits. An immediate motion was filed in the circuit court under the exclusive remedy provision by the City of Charleston. The circuit court denied that in May 2006, and a couple months later, in August 2006, the petitioner withdrew his line-of-duty disability pension from the City of Charleston Pension Board. All right, counsel, all of this leads to your arguments various times. You've cited judicial estoppel arguments. You've cited collateral estoppel, election of remedies. But I do have a specific question to ask you. Before the arbitrator, as I understand it, you raised the defense of collateral estoppel and election of remedies, right? Correct. But when did this theory of judicial estoppel arise? Collateral estoppel is a branch of judicial estoppel, according to the cases we cited. They are related, but they actually are separate and distinct actions, you realize. They're not the same. I believe I've tried to understand. Maybe you didn't mention race judicata before the arbitrator, quite honestly, Judge. But from the elements involved in collateral estoppel as well as judicial estoppel, I think there's an alignment of what's necessary. But here's where I'm going. They are separate and distinct. So if you didn't raise it before the arbitrator, the raising of the first time of an appeal, why wouldn't the argument on judicial estoppel be forfeited? I don't believe it's forfeited, Your Honor, if I did not specifically state judicial estoppel in my preamble to the arbitrator. Certainly, the evidence we've raised and the arguments we've made at the time would account for that theory. We've argued it since under both randomly referenced judicial estoppel or collateral estoppel. So in your mind, they're the same? I believe under the case law we cited in the Faxes case, either one can apply. The elements are there for both. And collateral estoppel, it's within a subset of judicial estoppel. So I understand that there may be different courts indicating different elements of the four or five elements of each, but it's all under the same family. And I believe the record is amply there for the arguments we've made from the get-go on this. If you use the word estoppel, it covers all estoppels? Equitable estoppel, collateral estoppel, judicial estoppel? Again, given the elements that we laid out in our arguments for judicial estoppel and the definitions of collateral estoppel, I believe the argument is amply there in the record. I think the case law may use them a bit interchangeably, or that's how I interpreted them, and maybe the actual elements of each is not entirely clear, but I think the elements that we argued and the arguments we've raised have been there from the start. On the collateral estoppel side of things, maybe overly simplifying things, but you're claiming that in the civil suit that the employee brought against the city of Charleston, he took a position that he was not in the course of his employment at the time, and therefore he could pursue the negligence claim against the city. You've indicated that he should be collaterally estopped from denying that same position or asserting a contrary position before this court, and the two are inescapably irreconcilable. Collateral estoppel should prevent him from pursuing the workers' compensation remedies here. Now, in the circuit court when the city of Charleston was defending that suit, were there sworn pleadings, was there an affidavit or were there affidavits on the part of the city of Charleston establishing that Mr. Philpott instead was an employee of the city? In other words, did the city take a contrary position in those proceedings as compared to the position it is taking here? And if so, shouldn't the city be collaterally estopped from taking a contrary position? The city's position has not changed. The position we took at the industrial commission hearing, workers' compensation commission hearing, was that by virtue of the evidence produced by Mr. Philpott and the actions he took and the benefits he received from that contrary position, he was now estopped from doing that. As I laid out in the brief, none of the evidence we submitted at the time of arbitration weighed on the issue that he was not in fact a person of employment. All of it was evidence that he had produced, and we simply cross-examined him. Did you sign this affidavit? Is this what you said? Was this your testimony? I'm not talking about at arbitration. I'm talking about the circuit court level in the negligence action. Did the city of Charleston assert through sworn pleadings or through affidavits that Mr. Philpott was an employee in the course of his employment at the time of the accident? Yes. So why shouldn't the same theory that you're asserting here, to Mr. Philpott's detriment, work against the city of Charleston? Because the city did not make a contrary assertion as to his status as an employee before the Workers' Compensation Commission. The city's position is, by his actions, he's estopped from doing that because he's created a record that he was not in the course of employment, and now is claiming that he is. In the civil proceedings, did the circuit court ever actually decide the employment issue? No, it did not. So how does estoppel work? Because you don't need an adjudication for estoppel to apply. In the cases we've cited, in the Smealis case, there was a settlement after evidence was produced that the nursing home is where the medical malpractice occurred. The plaintiff at that point dismissed the suit, including against the doctor, then refiled it against the doctor with evidence alleging that the malpractice occurred subsequent to the nursing home. The court said that he was collaterally estopped from doing that because he had already taken a different position that the malpractice occurred by another defendant and had received benefit from it. That case was settled. There was no adjudication. Did he receive a benefit in the civil case? He received no benefit in the civil case whatsoever. In the Smealis case, there was. In Mr. Philpott's case, his claim was dismissed on other grounds. Well, it may have been on other grounds, but he received no benefit from the case. Correct. So now the question becomes, should you be arguing the estoppel theory because of the civil case, or should you be arguing the estoppel theory by reason of the non-duty disability case? That is primarily... You had no benefit in the civil case, so it occurs to me you're missing an element of estoppel. You have received no benefit from it. If you could not plead or at least pursue inconsistent remedies, the election remedies cases say that you can pursue, you just can't recover on both. So it occurs to me that all your estoppel arguments have to be aimed against the non-duty disability pension and have nothing to do with the civil case, unless, of course, you should have been raising an issue of judicial admission, which I don't think was ever raised before. Right. Well, the pension application was, in fact, raised as an additional basis for estoppel to apply. And, in fact, there was the benefit that was received in that matter. It meets all the elements directly and literally, not in line of duty. There's a lot of material to cover here. Can we get to the next potential bar to recover would be the election of remedies, Doctor? How does that apply to bar the claimant's application in this case? Let me ask one question. On the non-duty disability pension, he can't collect both that and workers' compensation, can he? Isn't it offset? Well, there was that representation made. Frankly, if you get a line of duty disability pension and workers' compensation, it's offset. Because they are directly contrary, I don't know that that's necessarily true. As I indicated in brief, I'd like to hold them to that. You don't know? Correct. And I don't know that if this case is there, they may collect both because they got them under different theories. Let me ask another question about this. You know, this non-duty disability pension, in order to be entitled to a non-duty disability pension, is it necessary that the injury caused in the event occur from something other than his actions as a firefighter? Yes. Are you sure about that? What if he gets food poisoning while he's eating in the house? Do you think that entitles him to a duty disability pension? It's not an act of duty. Well, I suspect under those circumstances, aligning it with workers' compensation, it would mean something. He has to be there. He has to be a firefighter for 24 hours. But the case has suggested that's not an act of duty. And in the firefighter's pension and the police pension, well, firefighters specifically, it requires that the injury caused in the event be an act in the line of duty. He could be working when he's injured, but if he's not engaged in an act of duty, he's not entitled to a duty disability pension. He gets the non-duty disability pension. So it occurs to me that you can get a non-duty disability pension and still be entitled to workers' compensation, and there'd be an offset. Based on the McCullough case and other cases on collateral supple, I don't believe that's true because if there's a determination made as to in line of duty or not in line of duty, regardless of which one is made first, the pension decision is binding on the commission. Well, but he can get a non-duty disability pension when he's an employee. Pardon me?  Right. There's no inconsistency. The question is, is it an act in the line of duty? Correct. As opposed to arising out of it in the course of the employment. Those are different concepts. They're different concepts. They're treated in some manner in alignment. But I agree that if he's an active firefighter, has a non-duty-related disability, he can get that, and if he can still work under the standards of a disability, that may be a difficult scenario. But in your hypothetical, I don't think that that's inconsistent with anything we're arguing here. Here we're saying the same circumstances. On the one hand, he's saying in a sworn statement, this was not on duty and received benefits from it. And from the same circumstances, he's going to the commission saying, I was on duty. No, no, no. He's going before the commission saying my injury occurred out of it in the course of my employment. Correct. Different than saying on duty. Counsel, if the city is worried about double recovery, I suggest you look at 4-114-2A of the code, which I think says the claimant's pension award would be offset by his workers' compensation. Very good. Assume your own edification. I appreciate that. I'm not sure that that's as relevant an inquiry on the judicial estoppel argument, collateral estoppel argument, as the facts that all of you have. In the minutes left, let's talk about a rising out of it in the course, and you have also added that as the overarching theory. But just to move that along, wasn't there time sheets showing that he was paid for this work? Subsequent to the accident, yes. There was a time sheet filled out indicating two hours of overtime work. Well, then why would it not be in the course of work? Does he get paid for work, for doing things that are not related to his job? Again, the city's position from the get-go was that benefits would be paid under the Workers' Compensation Act. And as the petitioner's testimony makes clear, this entry was made sometime after. He didn't believe he was on the clock. He wasn't eligible for overtime. So the city took an action to give him benefit, two hours of pay for that. Acknowledged. And again, that's consistent with how the city has handled this from the get-go. Counsel, your time is up. You will have time on reply. Thank you very much. Counsel, you may respond. May it please the Court, I am Fred Johnson. I represent the petitioner appellant, Mr. Philpott. The first point I'd like to make is the standard of review in this case is a deferential standard on these equitable doctrines of judicial estoppel and election of remedies, and certainly it's a manifest weight of the evidence as to whether his injury arose in and out of the course of employment. I think that's the first predicate we need to begin with is it's a deferential standard of review. Addressing the issue of judicial estoppel to begin with. Why would it be a deferential standard of review on the estoppel issue if there is no dispute as to the facts? Facts can have different inferences, and what inferences can be drawn. In fact, this record has conflicting facts everywhere. No, we understand it has conflicting facts on the question of whether he was working or whether he was not working. But the question becomes whether there's any dispute as to the facts as to what he pled in the prior cases, what he applied for in the prior cases, and what he was awarded. There's no dispute as to that. There's no dispute what he did or what the employer did, but whether to initially invoke the doctrine of judicial estoppel is commended in the first instance to the trier of fact. I don't know that that's necessarily true. I think you'll find that there are cases that say that the application of the doctrine of res judicata, which the rest of these are part of the rubric, is vested in the discretion of the court because there are cases where we don't apply it. But I don't know that when the facts are undisputed as to what he did, what he applied for, and what he received, that we would have a manifest weight issue. Well, the series case says the application of the doctrine is within the sound discretion of the court. Exactly. It's a discretion standard, not a manifest weight. Well, my posture is it was up to the commission to decide whether it was equitable to invoke the doctrine or not, and that discretion in the first instance is in the commission. That's my posture. Yeah, but it's not manifest weight. In that particular case, your argument should be that it's an abuse of discretion. Abuse of discretion, that's more appropriately stated than manifest weight, but nonetheless it is the discretion of the commission in the first instance to invoke the doctrine or not to invoke the doctrine. Okay, counsel, I mean, obviously we'll decide the standard of review, but can you tell us in the summary form at least, if nothing else, why these potential bars, these potential defenses of collateral estoppel and election remedies don't apply? That's a fair question. In the circuit court, there was no resolution on the merits, so as a matter of law, the elements of judicial estoppel were not met. There was never a resolution. There is nothing that precludes it. He never raised judicial estoppel before he argued. He did not. So is it a forfeit? It's forfeited. Number two, insofar as what occurred before the pension board, it's important to bear in mind that his application was on a form. It's a two-page form. It's hand-filled out by my client. And he put on that application the type of disability he was applying for. He didn't represent on his form that he was injured in or out of the course of employment. It's the type of pension he is entitled to, keeping in mind that a firefighter doesn't get Social Security disability. And this man's case has prolonged for year after year before the courts and on and on and on. And finally, he's without benefits, and he had three choices. He can go on public aid. He can apply for a not-in-line disability or an in-line disability and get a higher benefit, a higher benefit being 65% rather than 50% of his income. And he also gets health insurance paid for, which is huge, that he doesn't in an out-of-line duty. He took the safest road that was fair to everybody. This man was entitled to a pension because he paid into that, and it was whether he was going to take advantage and get the higher pension, in which case there would be a problem pursuing a separate remedy in circuit court. Rather than do that, the safest thing and the fairest thing for everybody is to concede the lowest possible benefit and allow this case to proceed on the merits in either the circuit court or in the commission, in which instance he could lose potentially in both forms. All we were looking for is a forum in which the decision is whether or not he could receive a civil benefit or a comp benefit could be decided on the merits. So why doesn't collateral estoppel apply? Well, collateral estoppel once again is, it's not raised in the brief, and it's forfeited here because he argued judicial estoppel. Well, now before this panel, he is arguing judicial estoppel, not collateral estoppel. But going back to collateral estoppel, why doesn't it apply? Collateral estoppel applies between the parties, and in this particular case, being an equitable doctrine that it is, he has not taken inconsistent positions or obtained a decision on the merits that is inconsistent. He obtained a pension, which by law he was entitled to receive, and counsel conceded to the circuit court. When mid-shift, the circuit judge asked him at page 6 of my brief, and I quote, Is there any way you can argue to me, based on the facts we have in the record, that the city somehow suffered detriment? Counsel responded, quote, Financially, no. Now that is a judicial admission, and that's unequivocal. Now, he can't be doing it both ways at the trial court and then come before the appellate court and claim that there is a financial detriment. There is or there isn't. He unequivocally conceded when the circuit court was trying to make a decision. There was no financial detriment. Well, does there have to be a detriment for collateral estoppel to arise? Collateral estoppel is simply issue preclusion, correct? And so if you're talking about what would be the issue here that would be precluded, if you were to argue their side? Well, it's interesting you should raise that because we haven't briefed or addressed the issue of collateral estoppel because it wasn't framed here, but as I recall, collateral estoppel applies between parties. Judicial estoppel concerns the party's relationship to the court. And in this particular case, that doctrine likewise is an equitable doctrine. Even if all the elements are met, invoking it would result in injustice. And so if we look at the overall arching scheme of whether to invoke the doctrine would result in injustice, it is clear that it would. Because it is potentially possible, or was, that Mr. Philpott could have lost his top case on the merits and his civil case on the issue of local governmental immunity. Aren't there Supreme Court cases that say you can file both simultaneously? Absolutely. And that's what, in fact, the courts have said a cautious plaintiff... But that's an election of remedies argument. That's an issue of election of remedies. That's not really the estoppel argument. Election of remedies says you can file inconsistent remedies, you just can't go to judgment on both. You elect the remedy and that becomes a bar when you receive a benefit from one. Exactly. And there was no benefit that he received that he otherwise would not have been entitled to. Well, he received no benefit in the civil case at all. He did not receive any benefit. That eliminates the element in any case. In the civil case. What about the pension? In the pension board, he did not receive any benefit that he was otherwise entitled to receive. There is a pension, and whether it's in-line or out-of-line, he has the right to waive an in-line duty pension. And I direct the Court's attention to the language of the statute itself that is part of the statutes involved portion of our brief. And in that portion of the statute, it merely says under Section 5.4-11 that if a firefighter becomes disabled as a result of any cause other than an act of duty, he shall be granted a disability pension of 50%. The statute does not say he is precluded from getting that pension if he is injured in the line of duty. The statute merely mandates that if he is injured outside of the line of duty and he is totally disabled, he must get this lower pension. The statute does not by its plain terms preclude him from making the election. What is the language who becomes disabled as a result of any cause other than an act of duty? Now, unless we're talking about injury as a firefighter from some event that was not in the line of duty, the poison when he's eating dinner in the house. Fair enough. It's not an act of duty. But in this particular case, what was the act that led to his injury? He was struck by a backhoe while he was working in and out of the course of his employment. So now the question becomes, is that an act of duty for a firefighter? It may very well be out of and in the course of his employment, but is that an act of duty of a firefighter? Did they fool around with backhoes? As a matter of fact, it is, because this was a project that was part of the police and fire training that was taking place. They were building something to train firefighters to do their duty. And so building this, it was to educate firefighters on how to fight fires. We have cases that suggest that the moving of disabled firetrucks to a repair facility by a fireman while he's working is not an act of duty. It may arise out of and in the course of, but it's not an act of duty. He's not fighting a fire. He's not saving someone's life. If I could turn then to the issue of whether this, in fact, was an injury on the merits, that is to say arising in and out of the line of course of employment, you look at five factors, the right to control, the manner and method of work, how he's paid, the skill, furnishing of tools, material, and equipment. The right of control was clearly vested and directed by the fire chief. The manner of payment, he was paid his regular wage. They filled out a time card. In fact, it was filled out by the fire chief. And so he met all of those requirements. What did he say in his depositions in the civil case about getting paid and the filling out of the time card and the getting it? Didn't he contend he wasn't paid? And that somebody else filled it out later? That issue was disputed in the depositions at the circuit court level. They essentially argued he was injured in and out of the line of duty. No, no. No, I understand. What did he say? What did he say in his affidavits or when he was opposed in the circuit court? I honestly don't remember at this point. I think he said I wasn't paid. I think he said that they filled out the time card later. That's true. That's coming back to me. He said someone else filled out the time card for him. Yeah. Right. And that was the act of the city. And it was up to the commission who to believe, what inferences to draw, and whether taking the compilation of factors on the merits, this was in and out of the course of his employment. But it seems to me, looking at this case in an overarching fashion, the discretion was vested with the commission. The city's conceded before the circuit court there was no financial detriment. It gets a credit for every penny that was paid on the pension. And the public policy of this state is to favor resolution of cases on the merits, not on procedural technicalities. And if the city were to prevail in this case, manifest injustice would result because the city could then step back and say, Gotcha, Mr. Philpott. You took the lowest possible pension benefit that was to our benefit, and of course we wouldn't challenge something like that. And now because of that, and we reap those tremendous benefits, you are procedurally barred despite the fact the pension board never made a You were injured in or out of the course of employment. And despite the fact in the two-page form you filled out, you didn't put any factual representations. You were injured in or out of the course of your employment. You just chose the type of pension you were getting. And the statute that concerns out-of-duty pensions does not preclude a person injured in the line of duty from foregoing the higher benefit and taking that lower benefit to the benefit of his employer. Counsel, on that latter point, is there any case authority that we can look to? On the issue of credit? Well, whether or not an in-duty employee can obtain a not-in-duty pension. I am not aware of any case authority, but I am aware of the plain language of the statute that has nothing in it that says he is precluded from getting that benefit. All it says is if you, in fact, are injured outside the line of duty, you shall receive it. There is nothing that says this is the only way you can get it. And speaking of collateral estoppel, there is that line of cases I cited that says if there is a lack of incentive to vigorously litigate, that is a factor to be considered in whether to apply the doctrine of collateral estoppel. In this case, it was uncontested. They came before the board. No factual representations were made. It wasn't litigated. Everybody walked away. Mr. Philpott got the lowest benefit possible. He is entitled to it. Most people, when they get hurt on the job, they will go for Social Security Disability when they have quadriplegia, and then there is no issue. This poor man didn't have that option. And so the three choices, as litigation prolongs now for a decade, stay on public aid or, if you're independently wealthy, you're fine. Take the lowest line of duty pension you can get and let some forum decide the merits. Counsel, your time is up. Thank you. Counsel, you may reply. Thank you, Your Honor. Getting back to the designation of our defense in the case, we have argued the same case law and principles from the commission level on. The commission is a de novo proceeding. It's the first opportunity you have to submit briefs and make legal arguments other than what you propose to the arbitrator. So if I have been inarticulate or less than clear on the elements or the designations of collateral or judicial estoppel, and I believe I tried to cover everything in my preamble to the arbitrator, but I don't think that should be binding on me. If nothing else, the arguments we raised to the commission on the de novo standard raised all of these issues that we're raising here. With regard to the pension application, the not on duty pension application, raises in the reply. But the fact of the matter is that only the claimant can control whether he's going to apply for a line of duty or not on duty. But he's entitled to the not on duty pension no matter what. Not if he doesn't apply for it. Well, I understand, but I mean. But in applying for it, he has to certify to being true a statement that his injury did not occur in the line of duty. And that's where you have that consideration. Did he assert that or did he just decline to assert that it was in duty? There's a statement asking for the pension that he's applying for, indicated not on duty, and there's a statement saying that he swears that all these statements he's made are true and correct to the best of his knowledge. Is that a judicial admission or an evidence-free admission? It's done before the pension board. I do not believe it arises to the level of a judicial admission. He certainly has allegations in his civil complaint that I would say constitute judicial admissions. I mean, you can plead alternative theories there, inconsistent statements to cover both bases, whether it's a work comp case versus a negligence case. But here with the pension application, I mean, aren't we talking about an evidentiary admission? And then it's up to the arbitrator to make that call as to the application of the evidence? Sure. But that's where the estoppel argument comes in, because he's made a contrary assertion to the pension board than what he's making to the commission. Again, they're evidentiary assertions either way. Well, what about Justice Huffman's point? I mean, isn't it true that a firefighter can be injured while on the job and still not be entitled to an in-duty pension? I mean, we've seen a lot of those kind of cases where a city or whatever contests a line of duty, even though the person was clearly on the clock working, it's just he was not performing the ordinary duties of a fireman or policeman or whatever. So how can it be estoppel if you can draw a worker's comp under a circumstance where you're not in line of duty? As I think has become clear, I did not bother researching the pension code provisions very much because I did not believe that other than his admission and sworn statement that he was not in line of duty, the pension application and receipt of benefits and how they impact his comp award, I didn't see as important. So I apologize, Your Honor. I have not looked at the pension cases. The argument that I didn't see you make, whatever was said in the pleadings in the civil case, unless they were verified, clearly evidentiary admission. But what about what was said in the discovery, in the affidavits or in depositions? That's under oath. Those are judicial admissions. Those are not evidentiary admissions. Now the question becomes, can they be applied as evidentiary admissions in a different proceeding? Right. And I would like to make use of that in my research on judicial admissions, which I did do, unlike on the pension code. I did not, and I can't remember why, it's been several years that we've been making these arguments. If you haven't raised it before, can you raise it now for us to rely on? Can you add this in the middle of your argument? Well, I'm being answered, Your Honor. No, I'm asking the question. I didn't get to the question of whether he's waived the argument. I mean, the two seminal cases were Hanson v. Ruby I and Hanson v. Ruby II, and the cases both say the same thing. We'll not allow you to say in a proceeding something contrary to what you said under oath because that's subordination of perjury. And so, consequently, we will not allow it. But in both Hanson v. Ruby I and Hanson v. Ruby II, it was the same case. It was a summary judgment proceeding, where in the first case, he tried to deny an affidavit what he had said in deposition, and they said, we're not going to allow you to do that. Sent it back down, and then he brought in a third party to contradict himself, and they said, can't do that either. But those were always the same case. My question is, can you use the judicial admission in one case as a bar to judicial admission in another case, or is it really evidentiary admission in the second case? I know that I wanted to avail myself of judicial admissions and research this issue, Judge, and I believe by having not raised it, I would have to answer your question that they are evidentiary admissions or answer your question negatively. I can't remember if it's because it's negative or I didn't perceive that I could because this was not in the circuit court of Goldstown in a separate action. I believe your time is up. I would ask, thank you very much. I appreciate the consideration and would ask that the court reverse the award of the admission. Counsel, thank you both for your arguments in this matter this morning. It will be taken under advisement that the disposition shall issue in due course. The court will stand and recess subject to call.